George W. Dillingham *vs.* Tobias L. Roberts.

Hancock.    Opinion December 27, 1883.

*Deed.    Boundaries.    "Privilege."*

Where the description in a deed of a parcel of land bounded the premises upon one side by the shore of the sea at high water mark, and then added these words, "including all the privilege of the shore to low water mark." *Held*, that the fee in the land between high and low water mark passed to the grantee.

On report.

Writ of entry to recover a parcel of land between high and low water mark in Bar Harbor. Both parties claimed under deeds from Tobias Roberts; the plaintiff under a deed dated August 14, 1875, and the defendant under a deed dated December 27, 1868. The following is the description in the defendant's deed.

" Commencing at a birch tree seventy feet south of the steamboat wharf; thence south fifty-one degrees west, to the northeast corner of the Martin house, one hundred and sixty feet; thence south nine degrees west, to a stake, forty feet; thence north eighty-eight degrees east, one hundred and twenty-seven feet at two birch trees; thence north, forty-four degrees east, seventy feet to a birch tree on the bank; thence following the shore to the point of beginning — including all the privilege of the shore to low water mark, containing one-half of an acre more or less.'"

*Wilson and Woodward*, for the plaintiff.

Did the defendant, by the deed to him, acquire title to, become tenant of the freehold of the flats in question? The description in said deed begins at a birch tree. Upon reference to the plan, which is a part of the case, it appears that the birch tree is in the line of high water. After running around the upland, the

description returns waterward "to a birch tree on the bank." Again referring to the plan, we find this second birch tree exactly in the line of high water. The description then goes on : "thence following the shore to the point of beginning." That this description plainly excludes the flats, is, in the light of the following authorities, too clear for argument. *Storer* v. *Freeman*, 6 Mass. 435, 437 and 438 ; *Niles* v. *Patch*, 13 Gray, 254, 257 ; *Lapish* v. *Bangor Bank*, 8 Maine, 85, 89 and 90 ; *Dunlap* v. *Stetson*, 4 Mason, 349, 366 ; *Nickerson* v. *Crawford*, 16 Maine, 245 ; *Montgomery* v. *Reed*, 69 Maine, 510, 514 ; *Bradford* v. *Cressey*, 45 Maine, 9, 13 and 14.

Following the description in said deed which we have heretofore alluded to, come the words, "including all the privilege of the shore to low water mark." Do these words give defendant title to the flats, constitute him tenant of the freehold thereof? We respectfully submit that they do not.

The term " privilege," is one not intended for, or appropriate to the conveyance of title to the soil, for transferring the freehold. It is, rather, a term commonly used in the creation and transfer of easements and other incorporeal rights. Thus, Washburn, in the very opening of his work on Easements and Servitudes, alludes to the definition of an easement adopted by BAYLEY, J., from Termes de la Lay, which he calls a book of great antiquity and accuracy, as "a privilege that one hath," &c. See *Duncan* v. *Sylvester*, 24 Maine, 482 ; *Commonwealth* v. *Alger*, 7 Cush. 52 ; *Lapish* v. *Bangor Bank*, 8 Maine, 85 ; *Dunlap* v. *Stetson*, 4 Mason, 349 ; *Bradford* v. *Cressey*, 45 Maine, 9 ; *Montgomery* v. *Reed*, 69 Maine, 510 ; *Gerrish* v. *Union Wharf*, 26 Maine, 384 ; *Deering* v. *Long Wharf*, 25 Maine, 51 ; *State* v. *Wilson*, 42 Maine, 9 ; *Duncan* v. *Sylvester*, 24 Maine, 482 ; *Weston* v. *Sampson*, 8 Cush. 347 ; *Hill* v. *Lord*, 48 Maine, 83 ; *Moor* v. *Griffin*, 22 Maine, 350 ; *Barker* v. *Bates*, 13 Cush. 255 ; *Duncan* v. *Sylvester*, 24 Maine, 482 ; *Ripley* v. *Knight*, 123 Mass. 515 ; *Jordan* v. *Woodward*, 40 Maine, 317.

*Hale and Emery*, for the defendant cited : *Brown* v. *Lakewood*, 15 Pick. 151 ; *Reed* v. *Reed*, 9 Mass. 372 ; *Andrews* v. *Boyd*, 5 Maine, 199 ; *Butterfield* v. *Haskins*, 33 Maine, 395 ; *Earl* v.

*Rowe,* 35 Maine, 414; *Paramour* v. *Yardly,* Plowden, 540; *Stone* v. *North,* 41 Maine, 265; *Gleason* v. *Fayerweather,* 4 Gray, 348.

WALTON, J. The question is whether, if one conveys a parcel of land bounded upon one side by the shore of the sea at high water mark, and then adds these words, " *including all the privilege of the shore to low water mark,*" the fee in the land between high and low water mark passes to the grantee. We think it does.

In *Farrar* v. *Cooper,* 34 Maine, 394, the language of the deed was, " one undivided moiety forever of the *privileges* of a mill yard," and the court held that it carried the fee. Another description in the same deed was, the " north easterly half of a double saw mill, with the *privilege* of forever having and keeping a saw mill on the same plat of ground on which that half of the mill stands," and it was held that the fee passed. " For," said SHEPLEY, C. J., " a conveyance of the use of land forever is equivalent to a conveyance of the land." And this is undoubtedly true; for the greatest estate which one can have in land is its use forever; and if he conveys the entire use, or, in the language of the deed we are now considering, all his " privilege " in it, it is difficult to perceive how he can have any estate left.

The word " privilege," although not a very appropriate term to use in describing one's title to real estate, may be so used without doing very great violence to its legitimate meaning. An estate in fee simple is in one sense no more than the privilege of holding land by a certain tenure. Such a holding may be described as a " privilege " without doing violence to the term. And especially is this true of land over which the tide ebbs and flows; for while it is true that by virtue of the ordinance of 1641 – 7 one whose land is bounded by the sea may hold to low water mark, still, that portion of his land over which the tide ebbs and flows, is so incumbered by public rights, that he would be very likely to regard it, and to speak of it, as a mere privilege, and a very limited one at that. At any rate, we fail to see how one who has conveyed " all the privilege of the shore to low water mark," can have any right, title, interest, or estate

left in it.   It is well settled, as stated in the case cited, that a conveyance of the entire use of land forever is equivalent to a conveyance of the land itself.  Is not " all the privilege " as strong a term as " all the use ? "   We think so.   We do not mean to say that it is as appropriate a term to use.   But it does seem to us to be equally expressive and equally effective to convey all one's title to land over which the tide ebbs and flows.   And it will be seen by reference to the agreed statement of facts that this conclusion is decisive of the case in favor of the defendant.

*Judgment for the defendant.*

BARROWS, DANFORTH, VIRGIN, LIBBEY and SYMONDS, JJ., concurred.